UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 1:24-cv-24742-KMM

SKYE ADJUSTING, LLC,
A Florida limited liability company, and
MADISON DUROW,
an individual,

Plaintiffs,

v.

GENERAL MOTORS, LLC,
A foreign limited liability company,

Defendant.
_____/

## SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs, SKYE ADJUSTING, LLC, a Florida limited liability company ("Skye Adjusting") and MADISON DUROW ("Ms. Durow")(Skye Adjusting and Ms. Durow may be referred to collectively as the "Plaintiffs"), by and through undersigned counsel, sue Defendant, GENERAL MOTORS, LLC ("Manufacturer"), for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. ("MMWA"), for defects associated with a 2024 Chevrolet Panther Camaro with a vehicle identification number ("VIN") ending in 5556 ("Camaro"), which was warranted by Manufacturer and sold in a defective condition in this district.

### BACKGROUND

The 2024 Chevrolet Panther Camaro is a limited-edition, high-performance variant of the sixth-generation Camaro, produced in extremely limited quantities to commemorate the heritage of the original Panther project name. Unlike the standard Camaro, the Panther edition features

unique badging, exclusive exterior accents, enhanced suspension and engine tuning, upgraded interior trim, and other track-focused performance modifications. It was marketed by General Motors as a one-in-a-million collector-grade Camaro intended for discerning enthusiasts.[1]

Plaintiffs specifically sought out and paid a significant premium for this rare variant in order to become part of an exclusive group of owners. The limited production volume, specialized configuration, and historical significance of the Panther edition made it one of the most expensive factory-offered Camaros available in 2024. Plaintiffs' purchase was motivated by the uniqueness and exclusivity of the Panther edition. Yet, the defects described herein fundamentally undermined the very qualities they paid a premium to enjoy. Plaintiffs sue the Defendant for its breach of the MMWA as a result.

## STATEMENT OF JURISDICTION AND VENUE

1. Plaintiff Madison Durow is an individual residing in Polk County, North Carolina.

2. Plaintiff Skye Adjusting is a Florida limited liability company with its principal place of business in Florida.

3. Plaintiff Madison Durow is the president of Skye Adjusting, LLC.

4. Manufacturer is a corporation qualified to do and regularly conducting business in the State of Florida, with a registered principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265.

5. Manufacturer is engaged in the manufacture, sale and distribution of motor Camaros and related equipment and services throughout the State of Florida.

6. Manufacturer is also in the business of marketing, supplying and selling written

---

[1] *See*: MotorTrend Staff, *2024 Chevrolet Camaro Collector's Edition: Panther for the Last Ride*, MotorTrend (June 12, 2023, 8:00 AM), https://www.motortrend.com/news/2024-chevrolet-camaro-collectors-edition-panther.

warranties to the public at large through a system of authorized dealerships, including the dealership where the Camaro was purchased in Miami, Florida.

7. Manufacturer maintains a continuous and systematic presence in this District through its network of authorized dealerships, service centers, and marketing operations, including the dealership that sold the Camaro.

8. Manufacturer purposefully availed itself of the laws and protections of Florida by advertising, distributing, and warranting vehicles, including the Camaro, within this District.

9. The vehicle at issue was sold pursuant to a contract executed within this District, and the express warranty was offered and intended to be enforced within the same.

10. Manufacturer, through the stream of commerce, introduced the Camaro into the Florida market with the expectation that it would be purchased and used in this District.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States, specifically, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and meets the jurisdictional requirements under 15 U.S.C. § 2310(d)(1)(B), as the amount in controversy exceeds $50,000.00.

12. The events, actions and/or omissions giving rise to this action occurred in Miami-Dade County, Florida.

13. Venue is proper within the Southern District of Florida because Manufacturer is subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district. 28 U.S.C. §1391.

**FACTS**

*i.   Acquisition of defective Camaro & description of warranty coverage.*

14. On or about December 18, 2023, Skye Adjusting purchased and financed the Camaro from Dadeland Automotive, LLC in Miami-Dade County, Florida for a total cash price of

$118,077.00, exclusive of finance charges.

15. Underscoring the exclusivity of the Camaro and the desire to be among one of the select few owners of this vehicle, Skye Adjusting paid a hefty $20,000.00 markup to acquire the Camaro.

16. A true and correct copy of the retail installment sales contract is attached as Exhibit "A," which has been partially redacted to preserve privacy.

17. The Camaro was delivered to Skye Adjusting and put into use on or about December 18, 2023.

18. Pursuant to the purchase, Manufacturer issued a written warranty (the "Express Warranty") including a 3-year/36,000-mile bumper-to-bumper limited warranty and a 5-year/60,000-mile powertrain warranty. *See* Exhibit "B," p. 5.

19. Pursuant to its terms, the Express Warranty commenced on the date the Camaro was first delivered or put to use, which was on or about December 18, 2023. *Id*.

20. The Express Warranty obligated the Manufacturer to repair or replace any defects or malfunctions resulting from faulty materials or workmanship that arose during the warranty period, at no cost to the Plaintiffs. *Id*.

21. Plaintiff alleges that the subject vehicle was warranted pursuant to the "Bumper to Bumper" provision of the Express Warranty to be free from defects in materials and workmanship for a period of three (3) years or thirty-six thousand (36,000) miles, whichever occurred first." *Id*.

22. The existence and availability of Manufacturer's Express Warranty formed a part of the basis of the bargain in Skye Adjusting's purchase of the Camaro.

23. Had the Camaro not been accompanied by a manufacturer warranty that would cover repairs for defects in materials and workmanship, Skye Adjusting would have never

purchased the Camaro.

24. At the time of sale, the Camaro's Express Warranty booklet was not provided to Skye Adjusting for review before the transaction was completed.

25. Skye Adjusting did not receive a copy of the Express Warranty prior to purchase and had no opportunity to review or negotiate its specific terms and conditions.

26. As a result, Skye Adjusting had no notice of the precise limitations, exclusions, or other provisions contained within the Express Warranty prior to consummating the sale.

   *ii.*  *Transfer of defective Camaro within warranty period.*

27. At the time of the purchase of the Camaro, Skye Adjusting intended to purchase the Camaro to transfer it to Ms. Durow for her personal use but retain ownership of the Camaro as a company investment.

28. Following its delivery to Skye Adjusting on December 18, 2023, Skye Adjusting transferred possession and beneficial use of the Camaro that same day to Ms. Durow and well within the duration of the Camaro's express warranty.

29. Pursuant to the transfer arrangement between the Plaintiffs, Skye Adjusting would remain titled owner, maintain insurance on the vehicle, complete monthly payments on the loan for the vehicle and maintain registration on the vehicle.

30. Pursuant to the transfer arrangement between the Plaintiffs, Ms. Durow would be entitled to the use of the Camaro and would be obligated to maintain it and store it.

31. Pursuant to the transfer arrangement between the Plaintiffs, Skye Adjusting retained the right to retake possession of the Camaro.

32. Skye Adjusting did not retain any commercial use of the Camaro and transferred the Camaro on December 18, 2023 to Ms. Durow to be used for purposes germane to her personal, family, or household use.

33. Ms. Durow did so retain the Camaro for her personal, family, or household purposes and not for purposes of resale.

34. To date, Ms. Durow has maintained possession and has been the exclusive user of the Camaro.

### iii. *Discovery of latent defects & subsequent breach of warranty*

35. On or about December 18, 2023, within five miles of driving off of the selling dealership's lot in Miami-Dade County, Ms. Durow personally discovered a series of serious defects and malfunctions in the materials and workmanship of the Camaro, including, but not limited to, a hood that dropped below the body line while in motion and remained loose.

36. As described further herein, Ms. Durow further observed a defective hood latch, misaligned body panels, improperly installed hood pins, and damage to internal components such as the radiator support and center console.

37. These defects and malfunctions were present at the time the Camaro was delivered and placed into service but were not readily observable.

38. The defects and malfunctions substantially impair the Camaro's safety, use, and value, rendering it unfit for its intended purpose of providing safe transportation.

39. As a direct result of these defects and malfunctions, Ms. Durow justifiably lost confidence in the Camaro's structural integrity and determined that operating the vehicle would pose a serious risk to her safety and to others on the roadway.

40. Consequently, the Camaro has remained parked and largely unused at Ms. Durow's residence to date.

41. The presence of these safety-critical defects and functional impairments has substantially diminished the Camaro's value, as it cannot be driven without endangering the safety of its occupants and others nearby.

42. At all relevant times, Plaintiffs properly maintained the Camaro in accordance with the owner's manual.

43. The aforementioned defects and malfunctions were not caused by misuse, abuse, neglect, accident, or environmental conditions.

44. Plaintiffs did not waive any warranty rights.

45. Despite making multiple documented requests for warranty repairs at Manufacturer's authorized dealerships, all of Plaintiffs' attempts failed to resolve the persistent and substantial defects.

46. Specifically, on or about December 28, 2023, Plaintiff Ms. Durow delivered the Camaro to Friendship Chevrolet for warranty assistance upon the direction of GM Customer Car & Aftersales representatives.

47. During the visit, Friendship Chevrolet completed an inspection for Ms. Durow and noted that the:

> hood was off set [sic] and the hood latch itself was not in correct position. We took the camaro [sic] to our local body shop and the loosed [sic] the two bolts on the hood and set it to its highest position. The hood will not close better with ease but is still offset with a gap on the left front. During the body shop inspection they also found that the hood had two dents on the right front near windsheild [sic]. With more inspection, we gound that the right fender has damage at the top of the windsheild. [sic].

*See* Exhibit "C."

48. These defects and malfunctions arise from faulty materials or workmanship and arose during the warranty period.

49. These defects and malfunctions are covered under the terms of the Express Warranty.

50. Manufacturer refused to provide warranty assistance during and no repairs were

completed during this visit.

51. Thereafter, on or about January 17, 2024, the Camaro was once more delivered to Friendship Chevrolet by Ms. Durow for further warranty assistance.

52. Friendship Chevrolet completed another inspection of the Camaro for Ms. Durow and noted, *inter-alia* the following defects and malfunctions:

- Possible damage to Rad Support/Upper Tie Bar;
- [Hood] Latch tilted forward but not ben, possible Rad Support Damage;

*See* Exhibit "D."

53. Friendship Chevrolet also noted the existence of defects and malfunctions in body gaps, bumper, fender, and rocker molding necessitating repair. *Id*.

54. These defects and malfunctions arise from faulty materials or workmanship and arose during the warranty period.

55. The defects and malfunctions are covered under the terms of the Express Warranty.

56. Manufacturer refused to provide warranty assistance during and no repairs were completed during this visit.

57. Over the following months, Ms. Durow pleaded with the Manufacturer for repair assistance under the terms of the Express Warranty through multiple written and oral communications, to no avail.

58. As a result of Manufacturer's failure and refusal to repair or replace the non-conforming vehicle, the Express Warranty failed of its essential purpose.

59. As warranted, the Camaro's value at the time and place of delivery should have been $118,077.00.

60. Based on its experience in the market for Panther Camaros, Skye Adjusting asserts that the Camaro is worthless due to the severe defects, malfunctions, and non-conformities present

at the time of delivery, all of which fall within the coverage of the Express Warranty.

61. This loss is particularly severe given that the Camaro was marketed and sold as a rare and exclusive collector vehicle.

62. Due to the defects and malfunctions identified herein, the Camaro cannot be used for its intended purpose and have deprived Ms. Durow of and from the use of the Camaro.

63. As a result, the difference in value between what was delivered (*i.e.*, a worthless, defective, and dangerous vehicle) and what was purchased (*i.e.*, a collector-grade sports car valued at $118,077.00) is equal to the full purchase price of the vehicle- $118,077.00.

64. Stated differently, the defects and malfunctions identified herein have reduced the fair market value of the Camaro from its hefty $118,077 purchase price to $0.00, representing a measurable loss to Skye Adjusting as the owner.

65. In addition, as a direct and proximate result of Manufacturer's failure and refusal to perform its obligations under the Express Warranty, Skye Adjusting has suffered harm in that it has been deprived of its contractual rights and benefits conferred by the Express Warranty, including the right to have the Camaro repaired or otherwise brought into conformity with the warranty's terms at no cost.

66. The defects and malfunctions described hereinabove have deprived Ms. Durow not only of the anticipated new car experience and use of the Camaro, but also of the prestige, utility, and collectability associated with being among a select few owners of a 2024 Panther Camaro.

67. Plaintiffs are now faced with the reality that the Manufacturer either cannot or will not properly repair the Camaro to conform with the terms of its Express Warranty and effectively have a six-figure lawn ornament.

68. Plaintiffs repeatedly contacted Manufacturer for repair assistance and were

provided excuses and delays.

69. Plaintiffs repeatedly contacted the Manufacturer and requested that the Camaro be repurchased and were rebuffed.

70. Plaintiffs provided timely written notice to Manufacturer and afforded a reasonable number of opportunities to cure the defects, malfunctions, and non-conformities prior to filing this action.

71. Specifically, Plaintiffs, through prior counsel, delivered a correspondence via email to General Motors at execreferral@gm.com on or about April 30, 2024.

72. Despite receiving this email correspondence, no meaningful resolution was achieved nor was any repair assistance provided.

73. Thereafter, on or about October 4, 2024 Plaintiffs delivered a written request for repair assistance dated September 27, 2024 to Manufacturer, once more requesting repair assistance under the Express Warranty and providing a final opportunity to cure the defects and malfunctions in the Camaro.

74. Despite receiving this correspondence, no meaningful resolution was achieved nor was any repair assistance provided.

75. Manufacturer failed and refused to bring the Camaro into conformity with the terms of the Express Warranty.

76. As a direct result of the Manufacturer's refusal to bring the Camaro into conformity with the terms of the Express Warranty, Ms. Durow, on or about April 3, 2025, obtained an invoice for the necessary repairs from an independent body shop that regularly performs subcontracted body work for local GM-franchised dealerships.

77. According to the preliminary estimate, the repairs would cost $6,177.75.

78. According to Ms. Durow's communications with the body shop, additional costs and expenses would be incurred following complete tear down and further inspection so the amount to repair the Camaro cannot would be significantly more than identified in the preliminary estimate.

79. Given that any repairs not completed by a Manufacturer authorized repair facility would void the terms of the Express Warranty and would not otherwise be covered under the terms of the Express Warranty, Ms. Durow has not pursued this course of action.

80. To date, the Camaro remains in the same inoperable, dangerous and defective condition as described herein.

81. Manufacturer's refusal to perform necessary and covered repairs constitutes a breach of the Express Warranty.

82. Under Florida Statutes section 672.719(2), the limited remedy of repair or replacement has failed of its essential purpose.

83. At all times material hereto, Plaintiffs were each entitled to enforce the written warranty under 15 U.S.C. § 2310(d)(1), as either the original purchaser or as a transferee to whom the Camaro was transferred for purposes other than resale.

84. Plaintiffs have retained the undersigned counsel and are obligated to pay reasonable attorney's fees and costs as permitted by law.

**COUNT I**
**BREACH OF EXPRESS WARRANTY UNDER MMWA 15 U.S.C. 2310(d)(1)**
**(SKYE ADJUSTING, LLC)**

85. Plaintiff Skye Adjusting incorporates and adopts paragraphs 1 to 84 as though fully set forth herein.

86. Skye Adjusting is a "consumer" as defined in the MMWA, 15 U.S.C, § 2301(3) as the purchaser of the Camaro.

87. The Camaro is a "consumer product" as defined in the MMWA, 15 U.S.C. § 2301(1) as it is tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

88. The Camaro was manufactured and purchased after July 4, 1975.

89. The Express Warranty is a "written warranty" as defined in the MMWA, 15 U.S.C. § 2301(6).

90. The amount in controversy is well in excess of $50,000.00, exclusive of costs, interest and attorney's fees.

91. The defects and malfunctions within the Camaro are all component parts that are covered under the Express Warranty.

92. Manufacturer's failure and ultimate refusal to pay for repairs or replacement parts is a breach of the Express Warranty.

93. The Camaro continues to exhibit the same substantial defects, malfunctions and non-conformities identified hereinabove which have not been rectified by the Manufacturer.

94. Manufacturer has been afforded reasonable opportunities to conform the Camaro to the Express Warranty.

95. The defects and malfunctions have impacted the Camaro's safety, use, value and reliability.

96. As a result of Manufacturer's breach of the Express Warranty, Skye Adjusting has suffered damages as a result of the diminution of value in the Camaro.

97. Plaintiff Skye Adjusting avers that the Camaro was delivered in defective condition and from the outset was incapable of being utilized for its intended purpose.

98. As a result, Plaintiff Skye Adjusting asserts that the appropriate measure of

damages is the purchase price of the Camaro.

99. Manufacturer's Express Warranty was not provided to Skye Adjusting until after the Camaro was delivered, nullifying any and all limitations, disclaimers, and/or dispute resolution provisions.

100. All conditions precedent prior to bringing this action have occurred, have been performed, or have been waived.

**WHEREFORE**, Plaintiff, SKYE ADJUSTING, LLC demands judgment against Defendant GENERAL MOTORS, LLC for all damages allowed by law including refund, diminution in value, consequential damages, costs, and attorney's fees.

## COUNT II
## BREACH OF EXPRESS WARRANTY UNDER MMWA § 2310(d)(1)
### (MADISON DUROW)

101. Ms. Durow incorporates and adopts paragraphs 1 to 84 as though fully set forth herein.

102. Ms. Durow is a "consumer" as defined in the MMWA, 15 U.S.C, § 2301(3) as someone to whom a consumer product is transferred during the duration of an implied or written warranty.

103. The Camaro is a "consumer product" as defined in the MMWA, 15 U.S.C. § 2301(1) as it is tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

104. The Camaro was manufactured and purchased after July 4, 1975.

105. The Express Warranty is a "written warranty" as defined in the MMWA, 15 U.S.C. § 2301(6).

106. The amount in controversy is well in excess of $50,000.00, exclusive of costs,

interest and attorney's fees.

107. The defects and malfunctions within the Camaro are all component parts that are covered under the Express Warranty.

108. Manufacturer's failure and ultimate refusal to pay for repairs or replacement parts is a breach of the Express Warranty.

109. The Camaro continues to exhibit the same substantial non-conformities and malfunctions identified above which have not been rectified by the Manufacturer.

110. Manufacturer has been afforded a reasonable number of opportunities to conform the Camaro to the Express Warranty.

111. The defects and malfunctions have impacted the Camaro's safety, use, value and reliability.

112. As a result of Manufacturer's breach of the Express Warranty, Ms. Durow has suffered expenses, losses, and damages, including but not limited to, loss of use of the Camaro, physical damage to the Camaro, and diminution of value.

113. Ms. Durow also has spent well over 50 hours attempting to enforce her warranty rights under the Express Warranty, causing her to take time off from her work resulting in measurable harm to Ms. Durow.

114. All conditions precedent prior to bringing this action have occurred, have been performed, or have been waived.

**WHEREFORE**, Plaintiff, MADISON DUROW, demands judgment against Defendant GENERAL MOTORS, LLC for all damages allowed by law including refund, diminution in value, consequential damages, costs, and attorney's fees.

### JURY TRIAL DEMAND

Plaintiffs, MADISON DUROW, an individual, and SKYE ADJUSTING, LLC, a Florida

limited liability company, each hereby demand trial by jury of all issues so triable.

                                            Respectfully Submitted,

                                            */s/ Joshua Feygin*
                                            Joshua Feygin, Esq.
                                            FLORIDA BAR NO: 124685
                                            Email:  Josh@sueyourdealer.com
                                            **SUE YOUR DEALER - A LAW FIRM**
                                            1930 Harrison Street
                                            Suite 208 F
                                            Hollywood, FL 33020
                                            Telephone: (954) 228-5674
                                            Facsimile: (954) 697-0357

## CERTIFICATE OF SERVICE

      I hereby certify that on August 12, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                            */s/ Joshua Feygin*
                                            Joshua Feygin, Esq.
                                            FLORIDA BAR NO: 124685