UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:24-cv-24742-KMM

SKYE ADJUSTING, LLC and
MADISON DUROW,

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.
_____/

**PLAINTIFF'S MOTION TO COMPEL BETTER RESPONSES TO REQUESTS FOR PRODUCTION AND FOR RELATED RELIEF**

Plaintiff, MADISON DUROW, by and through undersigned counsel, moves pursuant to Federal Rules of Civil Procedure 26 and 37, and Southern District of Florida Local Rule 26.1, to compel Defendant General Motors LLC ("GM") to serve amended and complete responses together with responsive records to Plaintiffs' Requests for Production 12, 14, 16, 18, 21, 26, 27, 30, and 31 , and state as follows.

**RELEVANT BACKGROUND**

1. Plaintiff served her First Requests for Production on March 10, 2025. Ex. A.

2. GM served written responses and objections on April 9, 2025. Ex. B.

3. On January 15, 2026, counsel conducted a detailed, good-faith meet-and-confer by phone conference addressing deficiencies in GM's responses.

4. On January 26, 2026, GM served a limited supplemental response addressing only

its response to request number three by producing a repair manual. No other responses were amended or clarified. Ex. C.

5.  To date, GM has not filed a Notice of Completion of Production, as required by S.D. Fla. L.R. 26.1(e)(7).

## LEGAL MEMORANDUM

a. **Relevancy of Requests**

Each of the disputed requests is directly relevant to Plaintiffs' claims for breach of express warranty under the Magnuson-Moss Warranty Act and the factual allegations set forth in the Second Amended Complaint. Plaintiffs allege that the subject 2024 Chevrolet Panther Camaro was delivered in a defective condition, exhibited substantial defects during the warranty period, and that GM failed or refused to repair those defects despite notice and repeated opportunities to cure. *See* Second Am. Compl. ¶¶ 35–41, 45–56, 57–75, 81–82.

Request for Production No. 12 seeks documents relied upon by GM in responding to Plaintiff's Interrogatories. GM's interrogatory responses necessarily address core disputed issues, including the existence and nature of defects, warranty coverage, repair history, and GM's asserted bases for denying warranty repairs. Documents relied upon by GM in formulating those responses are therefore relevant to evaluating the factual and legal sufficiency of GM's defenses and to determining whether GM breached the Express Warranty by failing or refusing to repair covered defects.

Request for Production No. 14 seeks documents evidencing repair work performed on the subject vehicle. Repair orders, work orders, service records, and related documents are central to Plaintiffs' allegations that the Camaro exhibited multiple defects during the warranty period, that Plaintiffs repeatedly presented the vehicle for warranty service, and that GM failed or refused to

repair those defects. *See id.* ¶¶ 35–38, 45–56, 57–59. These documents directly bear on defect manifestation, notice to GM, opportunity to cure, and whether GM complied with its obligations under the Express Warranty.

Request for Production No. 16 seeks franchise agreements between GM and its authorized dealerships that performed repairs or inspections of the subject vehicle. These agreements are relevant because Plaintiffs allege that GM administers and controls warranty repairs through its authorized dealer network and is responsible for warranty decisions made by those dealers. *See id.* ¶¶ 6–8, 45–47, 49–56. The franchise agreements govern warranty authorization, reimbursement, repair procedures, and GM's oversight of dealers, all of which are directly relevant to GM's responsibility for the refusal to perform warranty repairs and any disputes concerning agency, control or presentment of the Camaro for warranty assistance.

Request for Production No. 18 seeks written communications relating to the subject vehicle, its defects, and Plaintiffs' requests for repair or repurchase. Plaintiffs allege that they repeatedly notified GM of the vehicle's defects and sought warranty assistance through written and oral communications, yet GM failed or refused to bring the vehicle into conformity with the Express Warranty. *See id.* ¶¶ 57–75. Communications between GM, Plaintiffs, and GM's authorized dealers are therefore directly relevant to notice, opportunity to cure, refusal to repair, and whether GM's conduct resulted in a failure of the warranty's essential purpose.

Request for Production No. 21 seeks GM's Warranty Policy and Procedure Manual or similar documents. Plaintiffs allege that GM improperly denied or failed to authorize warranty repairs despite the existence of defects covered under the Express Warranty. *See id.* ¶¶ 49–56, 75, 81–82. GM's internal warranty policies govern how warranty claims are evaluated, approved, denied, and repaired, and are therefore relevant to determining whether GM followed its own

procedures, imposed undisclosed limitations, or acted inconsistently with the Express Warranty provided to Plaintiffs.

Request for Production No. 26 seeks internal GM documents concerning known defects in hood latches, body misalignment, radiator supports, and other structural components. Plaintiffs specifically allege structural and safety-related defects of this nature that manifested during the warranty period and substantially impaired the vehicle's safety, use, and value. *See id.* ¶¶ 35–41, 52–54, 95–96. Internal documents reflecting GM's knowledge of such defects are relevant to establishing defect existence, warranty coverage, GM's prior knowledge, and whether GM wrongfully refused to repair known manufacturing or workmanship defects.

Request for Production No. 27 seeks engineering reports, design specifications, quality audits, and internal defect investigations concerning the same structural issues. These materials are relevant to determining whether the alleged defects are attributable to faulty materials or workmanship covered by the Express Warranty and whether GM had the ability, but failed, to repair the defects. *See id.* ¶¶ 35–38, 49–56. Such documents directly bear on liability, breach, and the reasonableness of GM's refusal to perform warranty repairs.

Request for Production No. 30 seeks electronically stored information, including emails and internal messages, regarding warranty claims, defect investigations, and repair denials. Plaintiffs allege that GM repeatedly refused to authorize repairs despite notice and multiple opportunities to cure. *See id.* ¶¶ 57–75. Internal communications are likely to reveal GM's internal decision-making process, the reasons for denial or delay, and whether GM acted inconsistently with its warranty obligations, making this request directly relevant to breach and damages.

Request for Production No. 31 seeks records from GM's Global Warranty Management system for the subject vehicle, using precise nomenclature for the relevant pages within the system,

as depicted within records produced through GM's Initial Disclosures at GM00379. See Ex. D. Plaintiffs allege that the vehicle was delivered in a defective condition, that defects manifested during the warranty period, and that GM failed to authorize repairs despite documented warranty claims. *See id.* ¶¶ 35–41, 45–56, 57–59. The Global Warranty Management records contain GM's official warranty data, including vehicle build information, warranty history, repair attempts, and internal warranty determinations, and are therefore directly relevant to proving defect history, warranty coverage, refusal to repair, and damages resulting from GM's breach.

### b. Defective Responses & Objections

#### i. Failure to Identify Responsive Documents

GM's responses violate Rule 34 by forcing Plaintiff to navigate a circular, self-referential "whack-a-mole" instead of identifying which documents are responsive to which requests.

In responding to Requests for Production Nos. 12, 14, 18, 30, and 31, GM repeatedly directs Plaintiff to "documents produced" or to its "Initial Disclosures" without identifying responsive documents by request or providing Bates ranges. Rule 34 requires production to be organized and labeled to correspond to each request, not an undifferentiated document dump. Fed. R. Civ. P. 34(b)(2)(E)(i); *Hagemeyer Mizner Grand Condo. Ass'n v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 700 (S.D. Fla. 2010).

The problem is compounded by GM's circular cross-references. By way of example, in response to Request No. 18, GM directs Plaintiff to Requests Nos. 1, 5, and 6. But Request No. 6 then refers Plaintiff to Requests Nos. 1, 4, 5, 13, 18, 34, and 35, while asserting boilerplate objections and failing to identify which documents are actually responsive. Similarly, Request No. 30 directs Plaintiff to Requests Nos. 5, 6, and 18, none of which identify any emails, messages, or ESI responsive to that request, nor state that no such records exist. Request No. 31 likewise refers

Plaintiff to Requests Nos. 5 and 6 yet neither request actually provides the requested records despite the fact that the records clearly exist. *See* Ex. D.

These circular referrals, often pointing to responses that either contain only improper objections, fail to identify responsive records or simply fail to provide the records in question, preclude Plaintiff from determining whether GM has fully complied with its discovery obligations.

GM should be ordered to supplement its responses by identifying, for each request, the documents produced in response by Bates number or affirmatively stating that no responsive documents exist.

### ii. Boilerplate Objections, Unsupported Assertions of Privilege, and Partial Responses Obscuring Withheld Documents

Boilerplate discovery objections are improper and borderline frivolous. *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009). Yet, in responding to Requests for Production Nos. 12, 14, 16, 18, 21, 26, 27, 30, 31 as well as its perfunctory "General Objections," GM relies on rote buzzwords such as "overly broad," "unduly burdensome," "irrelevant," and "not proportional," without providing any request-specific explanation or factual support and then proceeding to respond to the request. Such objections are improper and insufficient as a matter of law. *Bouzaglou v. Synchrony Fin.*, No. 19-cv-60118, 2019 WL 3852295, at *6 (S.D. Fla. Aug. 15, 2019).

Compounding this deficiency, GM also broadly invokes attorney-client privilege and work-product protection in response Requests for Production Nos. 12, 14, 18, 21, 26, 27, 30, and 31 without identifying any withheld documents, producing a privilege log as required by Local Rule 26.1(e)(2)(B) or providing sufficient detail to permit the Plaintiff to determine if the privilege is properly claimed despite being required to do so. *DHA Corp. v. Hardy*, No. 15-MC-80201, 2015 WL 3707378, at *n. 3 (S.D. Fla. June 15, 2015).

GM's use of objections followed by partial responses in its responses to Requests for Production Nos. 12, 14, 16, 18, 21, 26, 27, 30, and 31 further obscures whether responsive documents have been withheld. Responses that object and then partially answer, without stating whether documents were withheld or whether no additional responsive documents exist, are improper. *See Consumer Electronics Association v. Compras and Buys Magazine, Inc.*, 2008 U.S. Dist. LEXIS 80465, 2008 WL 4327253 (S.D. Fla. Sep. 18, 2008) (formulaic objections followed by an answer serve only to waste the time and resources of both the parties and the Court, leaving the requesting party to wonder whether the question has actually been fully answered.) It is well established that discovery responses must state whether documents were withheld based on an objection or whether no responsive documents exist at all. *Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 688 (S.D. Fla. 2016).

Because GM has asserted boilerplate objections, invoked privilege without a compliant privilege log, and provided partial responses that fail to disclose whether responsive documents have been withheld, Plaintiff cannot evaluate the sufficiency of GM's production. GM should therefore be ordered to withdraw its improper objections and either produce all responsive documents or provide a privilege log that complies with the Local Rules.

### iii. Hyper-Technical Interpretations

To the extent Defendant attempts to oppose this Motion by advancing hyper-technical interpretations of the discovery requests in order to evade its disclosure obligations, such a position should not be condoned. Courts in the Southern District of Florida routinely require parties responding to discovery to apply common sense rather than gamesmanship. *See, e.g., Ward v. Nierlich*, No. 99-14227-CIV, 2005 WL 8157752, at *2 (S.D. Fla. Apr. 25, 2005). Instead of applying common sense to facilitate the truth-seeking function of discovery, Defendant has elected

to obstruct and frustrate the discovery process, conduct that is inconsistent with both the spirit and the letter of the Federal Rules of Civil Procedure.

## CONCLUSION AND REQUESTED RELIEF

For the reasons set forth above, GM's responses to Requests for Production Nos. 12, 14, 16, 18, 21, 26, 27, 30, and 31 are deficient under the Federal Rules of Civil Procedure. Despite the clear relevance of the requests, GM has asserted boilerplate objections, unsupported claims of privilege, and partial responses that fail to disclose whether responsive documents have been withheld.

Plaintiff respectfully requests that the Court grant the Motion to Compel and order GM to withdraw its improper objections, produce all non-privileged documents responsive to the disputed requests, identify responsive documents by Bates number or affirmatively state that none exist, and provide a privilege log compliant with Local Rule 26.1(e)(2)(B) for any documents withheld. Plaintiff further requests an award of reasonable attorneys' fees and costs incurred in bringing this Motion pursuant to Rule 37(a)(5), and such other relief as the Court deems just and proper.

## S.D. FLA. LOCAL RULE 7.1(A)(3) CERTIFICATE OF CONFERRAL

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), undersigned counsel certifies that he conferred in good faith with Defendant's counsel on January 15, 2026 for over an hour, to address, *inter alia*, the instant Motion and Defendant's objections to Plaintiffs' Rule 30(b)(6) deposition notice and accompanying duces tecum requests.[1] During the January 15, 2026 conferral call, Defendant's counsel represented that they would need to confer with their client, but did not commit to a date certain for completing that supplementation. Despite the conferral, the Parties were unable to resolve Defendant's objections.

---

[1] Defendant asserted objections to all forty (40) Rule 30(b)(6) deposition topics and all thirty-one (31) duces tecum document requests served with Plaintiffs' Notice of Taking Deposition.

Dated: January 30, 2026        Respectfully submitted,

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email: Josh@Sueyourdealer.com
SUE YOUR DEALER – A LAW FIRM
4601 Sheridan St #205,
Hollywood, FL 33021
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2026, I electronically filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Florida, using the CM/ECF system, and that the foregoing document was served electronically to the following counsel of record:

All parties of record.

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685